IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **Michael Liggins**, | No. 20 C 4085 |
| Plaintiff, | Hon. Mary M. Rowland, District Judge |
| v. | |
| **The City of Chicago**, **Russell Egan** & **Vincent Alonzo**, | |
| Defendants. | |

**Plaintiff's Motion to Compel Production of
the Defendant Officers' Complaint Register Files**

Plaintiff Michael Liggins, through his undersigned attorneys, respectfully moves the Court to compel production of all complaint register (CR) files against Defendants Egan and Alonzo. In support of the motion, he states as follows:

**Introduction**

Defendants have withheld 13 of their CR files documenting allegations of professional misconduct against them. Defendants claim that the files are irrelevant and would be unduly burdensome to produce. Defendants, however, already objected that it would be too burdensome to produce all of their CR files, and they lost that battle. Dkt. 38. Furthermore, relevance is rarely a basis to block discovery, and certainly not where the requested CR files are critically important to Plaintiff's claims. Defendants Egan and Alonzo have a lengthy track record of misconduct that includes allegations of evidence fabrication, the suppression of exculpatory evidence, and a wholesale disregard for constitutional limits on police authority. This evidence

1

is admissible against the Defendant Officers to show, among other possible uses, "intent, opportunity, preparation, and plan," *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993), and have long been discoverable in civil rights suits such as this one, *see Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004) (declining to limit discovery of prior complaints against defendant officers to the past five years or to only those complaints deemed similar to those raised in the lawsuit because complaint histories are discoverable and admissibility should be determined at trial). And Plaintiff further alleges that the Defendants' misconduct was part of widespread pattern of wrongdoing resulting from the City's deliberate indifference. The fact that the Defendants Egan and Alonzo have a long track record of alleged misconduct—and the fact that *none* of these allegations resulted in meaningful discipline or accountability from the City—is proof positive of these claims. Defendants should therefore be compelled to disclose their entire disciplinary history.

## Background

In this lawsuit, Plaintiff alleges that Defendants Egan and Alonzo fabricated evidence, including writing false police reports and maliciously orchestrating physically impossible eyewitness identifications, in an effort to frame him for a murder he had nothing to do with. As a result of these Defendants' willful misconduct, Plaintiff spent five years in Cook County Jail awaiting trial before a jury acquitted him of murder. These claims are backed by evidence: One witness has provided deposition testimony that police officers coerced him to identify Plaintiff, while another witness supposedly identified the Plaintiff for the first time in a photo array

six years after the murder, and Plaintiff (who is 6'3" tall) did not remotely fit the description of the 5'6" – 5'8" offender.

Plaintiff also alleges that his wrongful arrest and prosecution resulted from the policies of Defendant City of Chicago, which was deliberately indifferent to similar widespread misconduct throughout the Chicago Police Department and which failed to provide even minimally adequate training and supervision to its officers despite the obvious need to do so.

### A.    Plaintiff's discovery requests pertaining to CRs

In December 2020, Plaintiff issued a request for production under Rule 34 seeking "[a]ll Documents related to any Complaint of any person alleging official misconduct of any kind on the part of any of the Individual Defendants." Ex. A (Pl.'s Requests for Production) at 5. Before producing any documents in response to this request, Defendants moved for entry of a confidentiality protective order that would designate all CR files as confidential. Dkt. 33 at 3–5. Plaintiff, relying on Illinois law holding that CR files are *not* confidential or protected from disclosure, proposed that CR files against the Defendant Officers, totaling 15 to 20 such files, should be produced in both confidential and non-confidential (i.e., FOIA-redacted) versions. Dkt. 36 at 1–2. Defendants objected that this procedure would impose an undue burden even for the relatively few files at issue. Dkt. 37 at 6.

The Court rejected Defendants' arguments regarding burden and ordered the production of two sets of CR files. Dkt. 38. The Court noted that this production would

3

not be unduly burdensome based on Defendants' representation that "there are only 20 such CR files." *Id.*

**B.    Defendants' refusal to produce a complete set of CR files**

In response to Plaintiff's written discovery requests, Defendant City stated that it would produce only CR files from the period "10 years prior to Plaintiff's May 13, 2014 arrest to present, and that have been found to be 'sustained' or that contain allegations similar to those being made in this matter." Ex. B (Def. City's Responses to Pl.'s Requests for Production) at 17.

Plaintiff objected to Defendants' decision to unilaterally limit their CR file production. Ex. C (Mar. 8, 2021 ltr. from J. Hazinski to A. Becknek et al.) at 2-3. In a telephone conference, counsel for Defendants stated that they would no longer limit their response to sustained CRs or those with allegations "similar" to this lawsuit, though Defendants stood by their refusal to produce CR files from before 2004. Ex. D (Mar. 16, 2021 email from J. Hazinski to S. Cohen et al.) at 1-2. But just a few days later, counsel for the City reversed course and again took the position that Defendants would not produce any CRs unless the CRs were sustained or Defendants determine they are similar to the allegations in this lawsuit. Ex. E (Mar. 24, 2021 email from A. Becknek to J. Hazinski et al.).

Defendants have elected to produce fewer than half of the Defendant Officers' CR files. Ex. F (June 24, 2021 ltr. from J. Bagby to J. Hazinski et al). Of the 22 log numbers pertaining to the Defendant Officers, the Defendants have producing just nine complete CR files (which the City has referred to as "CLEAR files" or "CLEAR log files"). For the remaining 13 log numbers, they will provide only short summary

4

documents devoid of details about the investigation and resolution of the complaints. *Id.*

## Argument

There are two problems with Defendants' approach. First, CR files have long been determined to be relevant to the section 1983 claims brought here, and Defendants are not entitled to parse each file to determine whether it should be disclosed. Second, this Court has already held that it is not unduly burdensome to produce the requested number of CR files. In any event, producing less than 1,000 pages in a multi-million-dollar suit where a man lost five years of his life is proportionate to the needs of the case.

**A.  The requested CR files are relevant, admissible, and critical to all of Plaintiff's claims**

It is undisputed that the requested CR files are responsive to Plaintiff's discovery requests; the only question is whether Defendants are entitled to withhold them based on their own views about whether that evidence is probative of Plaintiff's claims. By refusing to produce CR files unless they meet an undefined standard of "similarity" to this case or were sustained against the Defendant Officers, the Defendants have unilaterally narrowed discovery in a manner with no basis in the Federal Rules of Civil Procedure.

The Defendant Officers' CR files are discoverable in their entirety because they are directly relevant to Plaintiff's claims. *See* Fed. R. Civ. P. 26(b)(1). Evidence is not exempt from discovery merely because it may ultimately be deemed inadmissible at trial. *Id.* ("Information within this scope of discovery need not be admissible in

5

evidence to be discoverable."); *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *4 (N.D. Ill. Sept. 25, 2020) ("The natural tendency of courts is to allow the civil litigant to discover information that is broadly 'relevant,' even if there may be a strong argument against its admissibility."). And it is just as clear that "[o]pposing counsel doesn't get to decide what's important to the other side's case." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2021 WL 185082, at *90 (N.D. Ill. Jan. 19, 2021); *see also EEOC v. Dolgencorp, LLC*, No. 13-CV-04307, 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) ("What constitutes relevant information is often a matter of judgment . . . .").

Plaintiff is seeking the Defendant Officers' CR files because these files represent the City's *only* systematic records of police misconduct. These files are relevant and admissible for myriad purposes and are central to Plaintiff's claims.

First, the CR files are relevant and discoverable evidence regarding the Defendants' tenure as sworn law enforcement officers. They will demonstrate, among other things, that the Defendant Officers were never subjected to meaningful discipline or oversight following allegations of misconduct, in turn supporting the inference that they were willing to engage in misconduct in this case because they did not fear professional repercussions. These files will also be admissible to impeach the Defendant Officers' anticipated testimony that they are simply law-abiding, hardworking police officers who followed the rules and would never engage in wrongdoing. And the CR files are independently relevant to issues of punitive damages (e.g., to show whether a large damages award is necessary to deter these

6

particular officers from their past pattern of misconduct, and whether prior disciplinary investigations put them on notice that their actions in this case were wrong).

Second, these files will provide evidence of prior bad acts admissible under Rule 404(b). Under *Wilson v. City of Chicago*, 6 F.3d 1233 (1993), evidence of past misconduct by police officers may be introduced to show, among other possible uses, "intent, opportunity, preparation, and plan." *Id.* at 1238. For example, whether Defendants Egan and Alonzo had the requisite intent to fabricate evidence when they obtained a physically impossible eyewitness identification of the Plaintiff six years after the crime is an issue that can be adjudicated by examining past CR files involving allegations of fabricated evidence or the conduct of other homicide investigations. Similarly, the CR files will help to show whether there was an opportunity for the Defendants to engage in the alleged misconduct, either because they had engaged in similar wrongdoing before or had engaged in other types of investigative misconduct and escaped punishment.[1]

Third, Defendants concede that the Defendant Officers' CR files are relevant to *Monell* discovery, but take the position that they should not have to produce any of the files they are withholding while *Monell* discovery is stayed. Ex. G (June 16,

---

[1] Defendants may dispute the extent to which these files will ultimately be admissible under Rule 404(b). But that is a question for trial, or perhaps summary judgment; the Court is not in a position to evaluate the admissibility of this evidence while discovery is ongoing and before either the Court or the Plaintiff had had the opportunity to review the contents of the files the Defendants are withholding. For now, it is sufficient to conclude that the requested files *may* be admissible, and they should be produced so that all the facts bearing on their admissibility can be properly investigated.

2021 email from J. Bagby to R. Ainsworth et al). But just because the files are relevant to Plaintiff's *Monell* claims does not mean that they are not *also* relevant to the claims against the Defendant Officers. As explained above, they are relevant for both purposes, and the Court's order expressly authorizes the parties to pursue discovery on the individual claims while other motions remain pending. *See* dkt. 39. Indeed, discovery on the *Monell* and the individual claims are closely intertwined, as Plaintiff alleges that there was a code of silence and a profoundly flawed disciplinary system within the CPD that permitted and even encouraged police officers to engage in misconduct in order to close cases. Compl., dkt. 1, ¶¶ 86–105. Widespread policies and customs of misconduct, as well as the CPD's failure to supervise and discipline its officers, make it more likely that the Defendant Officers in had the means and opportunity to fabricate and suppress evidence in Plaintiff's criminal case. *See, e.g.*, *Velez v. City of Chicago*, No. 18 C 8144, dkt. 150 (N.D. Ill. Nov. 30, 2020) ("[A]n individual defendant is more likely to commit the alleged constitutional violations . . . if a policy or custom was a moving force behind the misconduct. . . . [T]he jury would assume that other mechanisms—including the municipality's own policies and disciplinary watchfulness—are in place to tamp down the possibility of the misconduct. . . . The *Monell* claim thus has strong probative value in proving the individual claim.").

Defendants' position, put simply, is that they are entitled to decide which CR files Plaintiff gets to see. This approach has been roundly rejected. Courts generally do not engage in debates about whether the allegations in prior disciplinary files are

sufficiently similar or recent enough to be discoverable; those arguments are to be handled at trial, not during discovery. *See Vodak*, 2004 WL 1381043, at *5 (declining to limit discovery of prior complaints against defendant officers to the past five years or to only those complaints deemed similar to those raised in the lawsuit because complaint histories are discoverable and admissibility should be determined at trial); *Lepianka v. Vill. of Franklin Park*, No. 03 C 2991, 2004 WL 626830, at *2 (N.D. Ill. Mar. 26, 2004) (same); *Miller v. City of Plymouth*, No. 2:09-CV-205-JVB-PRC, 2010 WL 1754028, at *9 (N.D. Ind. Apr. 29, 2010) ("Plaintiffs are entitled to receive documents related to prior allegations of misconduct and disciplinary action taken against Defendant Weir, and the Court declines to limit this material solely to complaints and discipline for conduct similar to the allegations involved in this matter.").

Moreover, even if certain CR files appear at first glance to be unrelated to Plaintiff's allegations, they are still independently relevant to show the Defendants Officers' experience with CPD's disciplinary system and to develop a complete and accurate picture of their professional history. *See Bond v. Utreras*, No. 04 C 2617, 2006 WL 695447, at *4 (N.D. Ill. Mar. 10, 2006) ("The information in the Individual Defendants' performance reviews could support Plaintiff's claim that the Individual Officers' standing within the police department was not negatively impacted, despite the fact that they each had [allegedly] numerous civilian complaints against them." (alteration in original)). And discovery is still ongoing in this case, meaning that the nature and extent of the Defendant Officers' wrongdoing is still being uncovered;

9

third-party witnesses who have not yet been deposed may testify that the Defendants engaged in heretofore unknown misconduct that could make the CR files relevant in ways Plaintiff cannot anticipate.

Even if Defendants were entitled to pick and choose which CR files to turn over, which they are not, Defendants are using nonsensical criteria to decide which files to produce. For example, the Defendants are withholding CR files that were not sustained, despite the fact that a central issue in this case is the fact that CPD's lax disciplinary system almost *never* sanctioned officers for misconduct—which is the basis for Plaintiff's *Monell* claim for failure to discipline.[2] *See, e.g.*, Compl., dkt. 1 ¶ 96 ("Less than 2% of complaints against the Chicago police resulted in any discipline."). The refusal to provide CR files from before 1998 is similarly arbitrary; as explained below, there is no undue burden associated with producing pre-1998 files that justifies this limitation.

Ultimately, Defendants' position is untenable because this is not how federal discovery is supposed to work: a self-serving contention that certain files aren't probative of Plaintiff's claims is not a proper basis to withhold responsive documents. If Defendants believe these files are not admissible or relevant to prove Plaintiff's claims, that is an argument they may make at summary judgment or in limine before

---

[2] Defendants' reliance on the stay of *Monell* discovery is not well taken. Producing these CR files in a piecemeal fashion would unnecessarily duplicate the proceedings, requiring multiple depositions of the Defendant Officers regarding any later-disclosed CR files after the City's motion to dismiss is denied. The City's arguments about the stay of *Monell* discovery simply illustrate why it makes little sense to distinguish the individual and *Monell* claims for the purposes of discovery.

10

trial, but it is not a reason to foreclose discovery into records of the Defendant Officers' misconduct at this stage.

**B.     Producing 13 CR files will not impose an undue burden, as this Court has already held**

Defendants argue that they should not have to turn over a complete set of the Defendant Officers' CR files because it would be unduly burdensome. Ex. E at 1. This Court already considered and rejected this argument when it entered Plaintiff's proposed confidentiality order. Specifically, the Court reasoned that it would not constitute an undue burden for Defendants to produce both confidential and public, FOIA-redacted versions of about 20 CR files. Dkt. 38 ("If the number grows beyond 40 files, the City should raise the issue with the court.").

Defendants have not pointed to any evidence that casts doubt on the correctness of this Court's prior decision. Indeed, the production of CR files thus far refutes any claim that the burden of producing these files is any way disproportionate to the needs of the case. The nine full CR files that have been produced average 74 pages each, with the longest being about 150 pages and the shortest only seven. At that rate, 13 more CR files would total less than a thousand pages—a volume of documents that is routinely produced in civil-rights cases like this one without objection. This is particularly true given that, for the reasons discuss above in section A, these files are relevant to numerous claims in this case.

Finally, if Defendants genuinely believed that the burden of producing these CR files was too great, their remedy would be to ask this Court to reconsider its ruling requiring the production of public, FOIA-redacted versions of the files. They have not

11

done so, which suggests that their objection is not truly based the burden of production but instead that they would simply prefer not to disclose records of the Defendant Officers' extensive alleged misconduct. To be clear, Plaintiff does not believe any reconsideration of this Court's prior ruling is warranted in this case given that the Court has already held that producing 22 CR files with FOIA redactions is not unduly burdensome. But if Defendants were truly concerned about the burden of production—rather than simply trying to bury records of prior alleged misconduct by the Defendant Officers—they would have brought that proposal to the Court. That they chose not to do so illustrates that there is no genuine problem of burden in this case.

## Conclusion

The question posed by this motion is simply whether Plaintiff entitled to discover the complete picture of the Defendant Officers' law enforcement misconduct, or whether Defendants entitled to selectively produce only those files that they have unilaterally decided are important to this case. As a practical and legal matter, it is beyond any reasonable dispute that the Defendants should turn over all of their CR files, and Defendants' desire to cover up their past wrongdoing does not justify noncompliance with discovery.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order compelling Defendants to produce all complaint register files against Defendants Egan and Alonzo.

June 30, 2021                                                    Respectfully submitted,

                                                                                                                                <u>/s/ John Hazinski</u>
                                                                                                                                *One of Plaintiff's Attorneys*

Jon Loevy
Arthur Loevy
Russell Ainsworth
John Hazinski
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
hazinski@loevy.com