IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LIGGINS,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO, RUSSELL EGAN, VINCENT ALONZO,<br><br>Defendants. | Case No. 1:20-cv-04085<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Liggins ("Liggins") alleges that Detective Russell Egan ("Egan"), and Detective Vincent Alonzo ("Alonzo") violated 42 U.S.C. § 1983 by depriving him of his right to a fair trial under the Fourteenth Amendment; depriving him of liberty under the Fourth and Fourteenth Amendment; conspiring to deprive him of his constitutional rights; and failing to intervene when his constitutional rights were violated (Counts I–IV). He also alleges that they violated Illinois state law by engaging in malicious prosecution; intentional infliction of emotional distress; and civil conspiracy (Counts VI–VIII). Liggins asserts a *Monell* claim against the City of Chicago ("the City") alleging that it had a policy or practice of condoning these constitutional violations that is cognizable under § 1983 (Count V). Finally, he seeks to hold the City responsible for the detectives' state law violations via *respondeat superior* and seeks indemnification from the City (Count IX–X).

The City has filed a motion to dismiss the *Monell* claim pursuant to Rule 12(b)(6). (Dkt. 19). Defendants Egan and Alonzo have filed a motion to dismiss Counts I, II, III and VIII pursuant to Rule 12(b)(6). (Dkt. 20). For the reasons stated herein, the City's motion to

dismiss is denied and the individual Defendants' motion to dismiss is granted in part and denied in part.

## I. Background

The following factual allegations are taken from the Complaint (Dkt. 1) and are accepted as true for the purposes of these motions to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). In 2008, two unidentified men attempted to rob a grocery store on the west side of Chicago, shooting and killing one employee. Immediately after the incident, witnesses described the offenders as African American men, approximately 5'11" and 5'9" in height. Five years later Michael Liggins, was arrested and charged with first degree murder related to the attempted robbery and murder in 2008. He was jailed in Cook County Jail from May 2014 to July 2019 awaiting trial, and eventually acquitted.

A few days after the 2008 grocery store murder, a 19-year-old named Jacob Tolbert was arrested for an unrelated crime. Tolbert could neither read nor write. He had an eighth-grade education and a mental disability, and was under the influence of narcotics when he was arrested. Egan and Alonzo nevertheless fed Tolbert information about the grocery store murder before questioning him about it. They also offered to give Tolbert $2,500 and help him avoid being charged with the crime for which he was arrested in exchange for identifying Liggins from a photo array. Egan threatened Tolbert with additional (false) criminal charges if he did not identify Liggins. Although Tolbert was not at the grocery store at the time of the murder and did not know Liggins, he ultimately identified Liggins in a photo array provided by Egan and Alonzo.

Defendants Egan and Alonzo then contacted the owner of the grocery store and asked him to identify the robbers from the same photo array. The grocery store owner was unable to make an identification from the photo array, which included Liggins. Liggins himself was not contacted about this case until years later.

In 2014, after the case had been cold for six years, Egan and Alonzo contacted Ronald Ruff, a witness who had seen the perpetrators flee. Ruff identified Liggins from a photo array. Defendants Egan and Alonzo helped Ruff prepare a written statement in which Ruff said that the man he identified as the perpetrator was shorter than his height, 5'11". Liggins is 6'3". Ruff viewed a physical lineup that included Liggins. Liggins was the only participant in the lineup required to wear a hooded sweatshirt (which the perpetrators had worn in 2008). Several of the other lineup participants did not resemble Liggins.

Egan and Alonzo also initiated contact with Shannon Alexander, who had given a television interview in 2008 stating that she had witnessed the crime but was not interviewed by police at the time. By 2014 Alexander was in custody for an unrelated offense. Egan and Alonzo showed her a photo array. Alexander told the Defendants that she was unable to identify anyone because the offenders' faces had been obscured by the hoods of their sweatshirts. Egan falsely reported that Alexander identified Liggins from the photo array, but that she refused to memorialize her identification by signing her name to Liggins' photograph.

By 2014 Tolbert was also incarcerated for an unrelated offense. Egan and Alonzo brought him by writ from prison for a second interview, which took place without his attorney present. According to Egan and Alonzo, in this interview Tolbert stated for the first time that he knew Liggins from high school and that he had lived near the grocery store. Tolbert then reidentified Liggins from a photo array.

At trial, Tolbert testified that he had no knowledge of the crime or Liggins' involvement. Tolbert also testified that he identified Liggins as the perpetrator only after Egan pressured him to do so and gave him with details of the crime. Both of the witnesses to the 2008 shooting, Ruff and Alexander, testified at trial. Before testifying, Alexander confirmed to the prosecutors that she could not identify the perpetrator and did not know whether Liggins

was the perpetrator. Alexander testified at trial but was not asked to identify Liggins or questioned about her previous identification of Liggins. Ruff testified that he had correctly identified Liggins from the photo array. The jury returned a verdict of not guilty and Liggins was released.

Liggins alleges that his arrest and many others were caused by policies and practices of the City of Chicago and the Chicago Police Department including failure to adequately train and discipline officers and enforcement of a code of silence protecting officers accused of misconduct such as fabricating evidence or manipulating witness identifications. Liggins cites several reports and sources documenting police misconduct and the failure to investigate and discipline officers who engage in such misconduct.

**II. Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *See Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

**III.    Analysis**

**A. Counts I and II: Right to a Fair Trial and Right to Liberty**

Liggins alleges in Counts I and II that Defendants violated his right to a fair trial under the Fourteenth Amendment and of his right to liberty under the Fourth and Fourteenth Amendments by fabricating evidence against him that resulted in his pre-trial detention for years. The factual allegations underlying these two Counts overlap. Egan and Alonzo argue that claims about unconstitutional pretrial detention caused by the fabrication of evidence are only cognizable under the Fourth Amendment.

Prior to 2017, courts in the Seventh Circuit routinely held that "once detention by reason of arrest turns into detention by way of arraignment—once police action gives way to legal process—the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper becomes a claim of malicious prosecution violative of due process." *Llovet v. City of Chicago*, 761 F.3d 759, 763 (7th Cir. 2014). In 2017, however, the Supreme Court held in *Manuel v. City of Joliet, Ill.*, that a § 1983 plaintiff who spent seven weeks in pre-trial detention *based on fabricated evidence* before his case was dismissed had a viable Fourth Amendment claim, but not a viable Fourteenth Amendment claim. 137 S. Ct. 911 (2017). This case resolved a circuit split about whether pre-trial detention was governed by the Fourth or Fourteenth Amendments. *Id*. at 917. The *Manuel* Court held that plaintiff had been "seized" for Fourth Amendment purposes for the duration of his pre-trial detention, and

5

that because that seizure as based on false evidence, it was not supported by probable cause, as the Fourth Amendment requires. *Id*. The Court explicitly held that the initiation of judicial proceedings (such as an arraignment) without probable cause "cannot extinguish the detainee's Fourth Amendment claim—or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause." (citing and overruling the Seventh Circuit's opinion in *Manuel v. City of Joliet*, 590 F. App'x 641, 643 (7th Cir. 2015), *rev'd and remanded sub nom*.).

In 2019 the Seventh Circuit adopted *Manuel's* reasoning in *Lewis v. City of Chicago*, holding that constitutional challenges to pre-trial detention lie in the Fourth Amendment, not the Fourteenth. 914 F.3d 472, 479 (7th Cir. 2019). Lewis had spent two years-in pretrial detention because of a falsified police report. The *Lewis* court held that after *Manuel* "all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment" and "the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process." *Lewis*, 914 F.3d at 479.

Despite this clear precedent from the Seventh Circuit, Liggins argues that *Lewis* was wrongly decided, because *Manuel* "did not extinguish due process claims for unlawful pretrial detention." (Dkt. 26 at 19). He relies on *McDonough v. Smith*, 139 S. Ct. 2149 (2019), where an election worker was targeted for investigation and prosecution. In *McDonough* the petitioner alleged evidence against him was falsified by the prosecutor because of a political grudge. Although he was indicted by a grand jury using this falsified evidence, he was not detained pending trial and was eventually acquitted. His subsequent § 1983 suit alleged both fabrication of evidence and malicious prosecution without probable cause. *Id*. at 2154. The Supreme Court, having granted *certiorari* to resolve a question about the statute of

6

limitations, did not address whether Petitioner's claims should have been brought under the Fourth or Fourteenth Amendments, saying only that it "assume[d] without deciding that the Second Circuit's articulations of the right at issue and its contours are sound, having not granted certiorari to resolve those separate questions." *Id*. at 2155.[1]

The Court agrees that the procedural posture of *McDonough* has created room for some debate. But district courts in the Seventh Circuit have refused to hold that *Lewis* incorrectly interpreted *Manuel* in light of *McDonough*.[2] *See, e.g., Young v. City of Chicago*, 425 F. Supp. 3d 1026, 1034 (N.D. Ill. 2019) (no "due process claim[s] for unlawful pretrial detention" after *Manuel*, and "*McDonough* does not limit *Lewis's* application to this case" because "certiorari was not granted on those issues."); *Moorer v. Platt*, No. 18 CV 3796, 2020 WL 814924, at *2 (N.D. Ill. Feb. 19, 2020) ("after *Manuel II* and *Lewis*, there is no overlapping constitutional protection—the Fourth Amendment is the only safeguard against wrongful pretrial detention"). In light of *Manuel* being on all fours with the facts presented here and until the Seventh Circuit says otherwise, *Lewis* is the precedent that binds this Court.

Plaintiff's Fourteenth Amendment claims are dismissed, but his Fourth Amendment claims may proceed. *Hallom v. City of Chicago*, No. 1:18 CV 4856, 2019 WL 1762912, at *2 (N.D. Ill. Apr. 22, 2019) (doing likewise) *Moorer v. Platt*, No. 1:18 CV 3796, 2020 WL 814924,

---

[1] The dissent objected to wading into the statute of limitations debate because Petitioner "fail[ed] to specify which constitutional right the respondent allegedly violated" but noted the Second Circuit had determined that "the claim sounds in procedural due process." *Id*. at 2161–62.

[2] The out-of-circuit cases cited by Liggins in support of this alternate reading of *Manuel* and *McDonough* are not to the contrary. *See Cole v. Carson*, 935 F.3d 444, 458 (5th Cir. 2019) ("The Supreme Court has not been clear on the constitutional basis for [a fabricated evidence] claim [. . .] *Compare Manuel v. City of Joliet* [with] *McDonough v. Smith*, [in which the Court] refus[ed] to rule on the constitutional grounding of such claims."); *Johnson v. Gondo*, No. CV GLR-19-995, 2020 WL 1529002, at *5 (D. Md. Mar. 31, 2020) (relying on *McDonough* only for its statute of limitations holding while noting that wrongful detention claims are cognizable only under the Fourth Amendment pursuant to *Manuel*); *Hoskins v. Knox Cty.*, No. 6:17-CV-84-REW-HAI, 2020 WL 1442668, at *23 (E.D. Ky. Mar. 23, 2020) (mentioning *McDonough* in a footnote while "stress[ing] again that Plaintiffs' § 1983 claims seek recovery under only the Fourth Amendment").

at *2 (N.D. Ill. 2020) (same). At the pleading stage Liggins need only provide factual allegations, not legal theories, so to the extent that facts or harms were improperly labeled Fourteenth Amendment violations, the Court grants him leave to amend his Complaint.

**B. Counts III and VIII: § 1983 and Civil Conspiracy**

Liggins alleges that Alonzo and Egan engaged in a conspiracy to deprive him of his constitutional rights and committed the Illinois state tort of civil conspiracy. The Defendants move to dismiss based on the intracorporate conspiracy doctrine and qualified immunity.

*1. Intracorporate Conspiracy Doctrine*

Defendants Egan and Alonzo first argue that the conspiracy counts are barred by the intracorporate conspiracy doctrine. To engage in a conspiracy, there must be at least two actors. The intracorporate conspiracy doctrine establishes (in certain legal contexts) that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867–69 (2017) (considering the applicability of doctrine in a § 1985 case).

Some Circuits have addressed the applicability of the intracorporate conspiracy doctrine to § 1983 claims, but the Seventh Circuit has not. *See Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) ("the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights."); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1262 (11th Cir. 2010) ("the intracorporate conspiracy doctrine bars [p]laintiffs' § 1983 conspiracy claims against [police] [o]fficers"); *Thomas v. City of Blue Island*, 178 F. Supp. 3d 646, 654 (N.D. Ill. 2016) ("the Seventh Circuit has not addressed the application of the intra-corporate conspiracy doctrine in the context of § 1983 conspiracy claims"). The Seventh Circuit has on various occasions affirmed conspiracy claims involving only police officers from the same

8

department, however. *See, e.g., Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) (reinstating conspiracy claim against "several members of the same police unit") *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (affirming jury determination of conspiracy among Chicago police officers); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1253–61 (7th Cir. 1984) (upholding damage award for conspiracy among Milwaukee police officers). And district courts have overwhelmingly declined to dismiss conspiracy claims against police officers pursuant to the intracorporate conspiracy doctrine.[3] Even if the intracorporate conspiracy doctrine *did* apply to § 1983 and Illinois civil conspiracy claims against police officers, that doctrine does not apply "to conspiracies that are part of some broader discriminatory pattern, or to conspiracies that permeate the ranks of the organization's employees." *Dobbey v. Jeffreys*, 417 F. Supp. 3d 1103, 1112 (N.D. Ill. 2019) (quoting *Hartman v. Bd. of Trustees of Comm. Coll. Dist. No. 508*, 4 F.3d 465, 470–71 (7th Cir. 1993)). Liggins has alleged just such a pattern of misconduct among officers of the Chicago Police Department. It would be premature to dismiss the conspiracy Counts before facts governing the applicability of these exceptions to the intracorporate conspiracy doctrine have been ascertained, as several courts have held. *See, e.g., Weston v. City of Chicago*, No. 20 C 6189,

---

[3] *See, e.g. Weston v. City of Chicago*, No. 20 C 6189, 2021 WL 2156459, at *10 (N.D. Ill. May 27, 2021); *Walker v. White*, No. 16 CV 7024, 2021 WL 1058096, at n. 16 (N.D. Ill. Mar. 19, 2021); *Pena v. Ortiz*, No. 20 C 3352, 2021 WL 722853, at *4 (N.D. Ill. Feb. 23, 2021); *Piercy v. Warkins*, No. 14 CV 7398, 2017 WL 1477959, at *19 (N.D. Ill. Apr. 25, 2017); *Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020); *Lovelace v. Gibson*, No. 17 CV 1201, 2020 WL 6049901, at *29 (C.D. Ill. Oct. 13, 2020); *Holzhauer v. Town of Normal*, 483 F. Supp. 3d 598, 605 (C.D. Ill. 2020); *Kudla v. City of Hammond*, No. 18 CV 419, 2019 WL 4297591, at *2 (N.D. Ind. Sept. 11, 2019); *Bresnahan v. City of Chicago*, No. 18-CV-1880, 2018 WL 4829597, at *4 (N.D. Ill. Oct. 4, 2018); *Casciaro v. Von Allmen*, No. 17 C 50094, 2017 WL 5626200, at *5 (N.D. Ill. Nov. 22, 2017); *Lovelace v. Gibson*, No. 17-CV-1201, 2017 WL 5196641, at *7 (C.D. Ill. Nov. 9, 2017); *but see David v. Vill. of Oak Lawn*, No. 95 CV 7368, 1996 WL 210072, at *4 (N.D. Ill. Apr. 29, 1996); *Haliw v. City of S. Elgin*, No. 19 CV 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020).

2021 WL 2156459, at *10 (N.D. Ill. May 27, 2021); *Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020).[4]

*2. Qualified Immunity*

Defendants Alonzo and Egan next argue that the § 1983 conspiracy claim should be dismissed because they are entitled to qualified immunity. Qualified immunity protects government officials, including police officers, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted). They argue that, because of the recent circuit split regarding the applicability of the intracorporate conspiracy doctrine to § 1983 conspiracy claims, the constitutionality of conspiracies between police officers is not clearly established. This argument misses the mark.

First, the Defendants' reliance on jurisprudence from the Sixth and Eleventh Circuits is misplaced. "To determine whether a right is clearly established, [courts] look first to controlling Supreme Court precedent and [their own] circuit['s] decisions on the issue." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). Neither the Supreme Court nor the Seventh Circuit has ever applied the intracorporate conspiracy doctrine to justify dismissal of § 1983 claims. The Court need not look to the law of other Circuits when the Seventh Circuit and the Supreme Court are in accord. *Id*.

---

[4] The cases cited by Defendants in support of the contention that the intracorporate doctrine applies to Illinois civil conspiracy claims are inapposite, because they involve conspiracies between corporations and their employees, not conspiracies among employees. *See Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (1998) (employee of a corporation and the corporation itself could not be liable for civil conspiracy to deprive plaintiff of worker's compensation benefits); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007) (civil conspiracy count limited to agreement between two corporations, not their employees, because the employees were agents of the corporations). These cases are unpersuasive for the reasons Plaintiff articulates in his brief: "the logical foundation of the intracorporate conspiracy doctrine is that agents of a corporate entity act on behalf of their principal." (Dkt. 36 at 21).

10

Second, the Court respectfully disagrees with the *Haliw* court's characterization of the "right" at issue, which the Defendants rely heavily upon in their briefs. The *Haliw* court held that what must be "clearly established" for purposes of qualified immunity is the availability of a defense to conspiracy liability: the intracorporate conspiracy doctrine. *Haliw v. City of S. Elgin*, No. 19 C 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020). The Court believes what must be clearly established is limited to the *underlying constitutional right* that the Defendants conspired to violate. *See Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020) ("Recent uncertainty over the intra-corporate conspiracy doctrine's application to § 1983 cases do not create an opening for qualified immunity on behalf the defendant officers."). This is because "[l]ike failure-to-intervene, a conspiracy among state actors is simply a means of proving that a defendant is legally responsible for the violation." *Id.* Defendants have not argued that the constitutional rights actually at issue in this case were not clearly established for purposes of qualified immunity. Defendants' motion to dismiss Counts III and VIII is denied.

**C. Count V: *Monell* Claim**

In Count V, Liggins alleges that the City of Chicago is liable for violations his constitutional rights because his injuries were caused by the "policies, practices, and customs of the City of Chicago, as well as by the actions of policy-making officials for the City of Chicago." (Dkt. 1, ¶ 135). To avoid dismissal of a *Monell* claim Liggins must plausibly allege that 1) he suffered the deprivation of a constitutional right; and 2) that a custom or policy of the City was the "moving force" behind the injury. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404; *Connick v. Thompson,* 563 U.S. 51, 61. *Monell* claims are not subject to a more stringent pleading standard than any other claim. *White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016) (citing *Leatherman v. Tarrant Cty.*

*Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 164 (1993)). The City argues that Liggins' *Monell* claim lacks the requisite specificity, fails to show the City had notice of a widespread practice, and fails to allege causation.

    *1. Specificity of Allegations*

The City first argues that Liggins makes only "formulaic, conclusory statements" about municipal policies. (Dkt. 19 at 5–6). The Court strongly disagrees. The allegations in Liggins' Complaint are overwhelmingly factual, and they clearly meet the relevant pleading standard. Liggins alleges, *inter alia*, that on more than 70 specific occasions in the last few decades Chicago police officers have fabricated witness identifications, fabricated witness statements, manipulated witnesses to influence their testimony, and concealed exculpatory evidence, in order to arrest and prosecute suspects such as Liggins. (Dkt. 1 ¶¶ 81–83). These allegations are corroborated by an FBI report containing the personal observations of an Assistant State's Attorney, as described in the Complaint. (Dkt. 1 ¶ 84). The Complaint cites the 2017 Department of Justice report that described the pervasive lack of training, discipline, and accountability in the Department. (Dkt. 1 ¶¶ 88–90). According to the Complaint, that Department of Justice report found that supervising investigators did not "diligently review the investigative records to determine whether witnesses have lied in police reports or whether supervisors have blindly approved reports without attempting to determine whether the reports are fabricated." (Dkt. 1 ¶ 91). A 2016 Chicago Police Accountability Taskforce report, also cited in the Complaint, made similar findings. These two reports cover the span of time during which Alonzo and Egan are alleged to have fabricated evidence against Liggins. Moreover, the Complaint alleges that "[b]etween 2004 and 2016, the City paid more than $500 million in settlements or judgments in police misconduct discovery, *without even conducting disciplinary investigations* in more than half of the cases." (emphasis added). The Complaint also explains that "[b]etween 2011 and 2015, nearly half of complaints filed

12

against Chicago police officers were not even investigated" and "fewer than 4% of those cases" resulted in discipline. (Dkt. 1 ¶¶ 93–94). According to the Complaint, former Chicago Mayor Rahm Emanuel, former Superintendent of the Chicago Police Charlie Beck, and the president of the Chicago police officer's union have all acknowledged that there is a "code of silence' that protects police officers from discipline. (Dkt. 1 ¶¶ 99–101).

Liggins also cites a cotemporaneous case in which it was found that there was a pattern or practice of 'failing to adequately discipline officers" and of a "code of silence" about officer misconduct. *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 604 (N.D. Ill. 2012). These factual allegations support the Plaintiff's assertion that "[a]s a matter of both policy and practice, municipal policymakers and department supervisors condoned and facilitate [*sic*] a code of silence within the Chicago Police Department," had a "practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, [and] failing to discipline officers accused of serious misconduct" which allowed and emboldened officers such as Alonzo and Egan to violate the constitutional rights of civilians like Liggins. (Dkt. 1 ¶¶ 97, 105). These are specific factual allegations covering the approximate time of the alleged constitutional violations are more than the pleading standard requires. It is difficult to imagine how the Plaintiff could be any more specific without the benefit of discovery.[5]

---

[5] *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) and *Pittman ex rel Hamilton v. City of Madison*, 746 F.3d 766, 780 (7th Cir. 2019), stand for the proposition that a few constitutional violations per year, in a big city or system, do not constitute a pattern under *Monell*. But in both cases the Seventh Circuit had before it the *summary judgment* record. There are far more extensive allegations here, and this case is at the pleading stage.

*2. Notice*

The City next alleges that it did not have notice of widespread fabrication of evidence in 2014 because the Department of Justice Report and the Police Accountability Task Force Report were published in 2017 and 2016 respectively. (Dkt. 19 at 9). This argument ignores the pre-2014 lawsuit, settlements, and aborted disciplinary investigations described in the Complaint, all of which point to a code of silence and a failure to monitor and discipline officers that allowed and emboldened officers to fabricate evidence. Moreover, the 2016 and 2017 reports were compiled using interviews and data about the years prior. It is not unreasonable to infer that this information, provided by the City's own employees, was available to the City in 2014. The City's reliance on *Baskins v. Gilmore*, 2018 WL 4699847 (N.D. Ill. Sept. 30, 2018) is misplaced since the *Baskins* court *declined* to dismiss *Monell* claims that were supported by allegations virtually identical to the allegations in Liggins' Complaint, and only disregarded allegations about past falsification of evidence to solve crimes because in that case, the alleged falsification of evidence had been for the purpose of covering up misconduct. *Id.* at *6. This Court does likewise and declines to dismiss the *Monell* claims on the basis of notice.

*3. Causation*

Lastly, the City argues that Liggins has failed to adequately allege causation. *See City of Canton, Ohio v. Harris*, 489 U.S. at 389 (city policy or custom must be the "moving force" causing the alleged constitutional deprivation). Liggins has amassed serious factual allegations about the Chicago Police Department's failure to train and discipline officers, and the code of silence that protects bad officers. He has also described a widespread pattern of officer misconduct regarding the fabrication of evidence. From these factual allegations, he asks the Court to draw the reasonable inference that the officers fabricate evidence *because*

14

they are untrained, undisciplined, and protected by a code of silence. This is an allegation of causation, and it is sufficient at the pleading stage.

## IV. Conclusion

For these reasons, the City's motion to dismiss (Dkt. 19) is denied and Defendants Alonzo and Egan's motion to dismiss (Dkt. 20) is granted in part and denied in part. Count I is dismissed. Defendants are to file an Answer by July 30, 2021.

E N T E R:

Dated: July 9, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge